IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HECTOR RIVERA, | : | No. 1:13-cv-2261 |
| Petitioner | : | |
| | : | (Judge Kane) |
| v. | : | |
| | : | |
| DILBERT SAUERS, | : | |
| Respondent | : | |

## MEMORANDUM

Before the Court is Petitioner Hector Rivera's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner is an inmate currently confined at the Federal Correctional Institution at Allenwood-Low Security, Pennsylvania. In the petition, he alleges that his due process rights were violated during a disciplinary hearing after which he was found guilty of Possession of a Weapon, a prohibited act in violation of Code 104. (Doc. No. 1.) For the reasons that follow, the petition will be denied.

## I.     BACKGROUND

Petitioner is serving a 136-month federal sentence, imposed by the United States District Court for the District of Nebraska, for Conspiracy to Distribute Methamphetamine. (Doc. No. 7-1 at 1.) His projected release date is March 3, 2020, via good conduct time release. (Id.) On March 19, 2012, following an anonymous tip received via note, a correctional officer at FCI-Allenwood Low Security recovered a nine-inch plastic weapon from under Petitioner's mattress. (Id. at 5.) In addition to Petitioner, the cell in which the weapon was found was occupied by his cellmates Alvarez and Lopez. Since it could not be determined to whom the weapon belonged, all three inmates received an incident report for the prohibited act of Possession of a Weapon, in violation of Code 104. (Id. at 12.)

That same day, Petitioner received a copy of the incident report charging him with Possession of a Weapon. On March 26, 2012, he was provided with a Notice of Discipline Hearing Before the DHO and Inmate Rights at Discipline Hearing Form. (Id. at 21-23.) Petitioner was advised of his rights and acknowledged he understood them as read. Appearing before the Unit Discipline Committee ("UDC"), Petitioner stated that the shank was not his and that he did not know who would have it in for him. (Id., Attach. B-1.) He did not request any witnesses. The charges were then referred by the Unit Discipline Committee to the DHO for further hearing.

On April 19, 2012, Petitioner was provided with a hearing in front of the DHO. At the beginning of the hearing, the DHO advised him of his rights and he indicated that he understood them. (Doc. No. 7-1 at 10-12.) Petitioner was offered the opportunity to present witness testimony, and chose not to do so. He also declined to submit any documentary evidence. (Id.) Petitioner did, however, choose to provide a statement. He informed the DHO there was an inmate, Limand, who became upset when Petitioner got a tutoring job. Petitioner further identified a friend of Limand, Blackmon, that lived across the hall from Petitioner and who may have been involved in planting the weapon in Petitioner's cell. Based upon this information, the DHO suspended the hearing and forwarded the issue to the Captain for further investigation. (Id.) Thereafter, both inmates identified by Petitioner were interviewed, and each denied any involvement in placing the weapon in Petitioner's cell. (Doc. No. 7-1 at 18.)

The DHO also attempted to obtain video footage requested by Petitioner. However, an email message from Captain Brian Feltman dated April 23, 2012 advised the DHO that no such video surveillance existed for the area in question due to the passage of time. The DHO noted

that approximately 30 days had passed from Petitioner's advisement of the charge and his expressing his belief that video evidence may exist to vindicate him. (Doc. No. 7-1 at 11.) The DHO hearing was reconvened on May 17, 2012, at the conclusion of the investigation.

Upon commencement of the hearing, the DHO advised Petitioner of the outcome of the investigation into the information he provided during the initial DHO hearing. No procedural issues were cited, no documentary evidence was provided by Petitioner for consideration, and no witnesses were requested. In addition to the Incident Report and Investigation, the DHO considered the following documents in making its final determination: a memorandum from T. Ransdorf and L. Parker dated March 19, 2012; a memorandum from T. Matthews dated May 11, 2012; a handwritten drop note; an e-mail message from B. Feltman dated April 23, 2012; and the photograph taken on March 19, 2012 of the weapon found under Petitioner's mattress. After consideration of this evidence, the DHO concluded that Petitioner committed the prohibited act of Possession of a Weapon, a Code 104 violation. He was sanctioned to 30 days disciplinary segregation, 40 days loss of good conduct time, and 6 months loss of commissary privileges. Petitioner was provided with a copy of the DHO report on May 24, 2012. (Id. at 12.)

Several months after the incident, inmate Ulloa approached Lieutenant Sheets alleging that his former cellmate possibly planted the weapon in Petitioner's cell. (Doc. No. 7-1 at 24.) Ulloa did not see the other inmate plant the weapon, and was unable to provide any additional witnesses or corroborating evidence to support his statement. As such, Sheets did not pursue this theory any further. (Id.)

Petitioner has filed the instant petition challenging the disciplinary proceedings. He claims that he did not receive a "judicial hearing" as required by the Constitution and that no

jury trial was conducted. He further challenges the sufficiency of the evidence and the failure of the DHO to secure videotapes that may have shown someone planting the weapon under his mattress. Finally, he argues that the information provided by inmate Ulloa several months after the incident should have exonerated him and resulted in a reversal of the DHO's finding of guilt.

II. **LEGAL STANDARD**

The Federal Bureau of Prisons' disciplinary process is fully set forth in the Code of Federal Regulations, Title 28, Sections 541 through 541.8. These regulations dictate the manner in which disciplinary action may be taken when a prisoner violates institutional rules. The first step requires filing an incident report and conducting an investigation. Staff must conduct the investigation promptly absent intervening circumstances beyond the control of the investigator. See 28 C.F.R. § 541.5. Following the investigation, the matter is next referred to the UDC for a hearing pursuant to 28 C.F.R. § 541.7. If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. If the alleged violation is serious and warrants consideration for heightened sanctions, or involves a prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a DHO for a hearing. Id. Based upon the seriousness of the charges against Petitioner and the potential sanctions greater than could be afforded by the UDC, the instant matter was referred for a disciplinary hearing.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Greatest category offenses carry a possible sanction of loss of good conduct time credits. When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive (1) written notice of the claimed

4

violation at least twenty-four hours in advance of the hearing, (2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals, and (3) a written statement by the factfinder as to evidence relied on and the reasons for the disciplinary action. See Wolff v. McDonnell, 418 U.S. 539, 564-66 (1974). The DHO's decision must be supported by some evidence in the record. See Superintendent v. Hill, 472 U.S. 445, 454 (1985); see also Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991) (applying Hill standard to federal prisoner due process challenges to prison disciplinary proceedings). The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455-56. Under Hill, judicial review of a prison disciplinary decision is limited to ensuring that the prisoner was afforded certain procedures, the action against him was not arbitrary, and that the ultimate decision has some evidentiary support. Id. at 457; see also 28 C.F.R. § 541.8(f) (requiring that the DHO's decision be "based upon at least some facts and, if there is conflicting evidence, on the greater weight of the evidence."). Moreover, "[t]he sufficiency standard is met where a DHO supports a finding of culpability solely by reference to an incident report compiled by a corrections officer." Moles v. Holt, 221 F. App'x 92, 94 (3d Cir. 2007)(citations omitted).

### III. DISCUSSION

The procedural requirements of Wolff and Hill have been met in the instant case. Petitioner timely received copies of the Incident Report and notice of his hearing. (Doc. No. 7-1

at 5-7, 21-23.) He was also informed of his rights prior to the hearing. (Id. at 10.) There are no allegations that the disciplinary hearing officer was not neutral. Petitioner was provided with the opportunity to make a statement and chose to do so, as documented in the DHO Report. (Id.) He was also given the opportunity to present documentary evidence, as well as have a staff representative, and chose not to do either. (Id.) Petitioner was additionally afforded the opportunity to present witness testimony. (Id. at 11.)

In the report prepared by the DHO following the hearing, he fully documented the evidence he considered in making his determination, and explained the reasons for the sanctions imposed. (Id. at 11-12.) Petitioner was notified of his appeal right and provided with a copy of the DHO's report which contained a written statement of the evidence relied upon by the DHO and the reasons for the sanctions imposed. (Id. at 12.) As such, Petitioner's disciplinary hearing complied with all the Wolff procedural due process requirements.

Further, the record demonstrates that the DHO met the evidentiary standard when he determined that Petitioner committed the prohibited act. He considered the evidence outlined above, including the Incident Report, the reporting officer's eyewitness written account, staff memoranda, the handwritten note advising staff of the location of the weapon, the photograph of the weapon, and Petitioner's own statement. (Id. at 11-12.) The weapon was found in Petitioner's cell under his mattress. Further, the DHO suspended the hearing in order to investigate Petitioner's allegations regarding inmates Limane and Blackmon, and both inmates denied any involvement in the placing of the weapon in Petitioner's cell. While Petitioner complains about the DHO's failure to obtain video footage which could have possibly exonerated him, the DHO did attempt to secure the footage. However, due to the fact that

6

Petitioner did not make the request for any video surveillance prior to the April 19, 2012 hearing, owing to the lapse in time, the video was no longer available. Based upon the foregoing, the DHO found that the greater weight of the evidence supported the finding that Petitioner committed the prohibited act of Possession of a Weapon.

In light of the foregoing, the DHO's decision meets or exceeds the "some evidence" standard. Further, Petitioner's argument that evidence provided by inmate Ulloa to Lieutenant Sheets several months after the incident and DHO sanctions should have exonerated him is unsupported by the record. Ulloa's statements were found to be speculative and uncorroborated. For these reasons, the instant petition for writ of habeas corpus lacks merit and will be denied. An order consistent with this memorandum follows.